Bradbury, J.
The defendant in .error, H. M. Stephens, filed in the court of common pleas of *127 Miami comity, the following petition against the county auditor and county commissioners.
“The plaintiff is a taxpayer of the county of Miami and state.of Ohio, and brings this suit on his own behalf and on behalf of all the other taxpayers of said county. Plaintiff duly requested the prosecuting attorney of Miami county to bring this suit, but he refused to do so and still refuses.
“The defendant, E. E. Pearson, is the duly qualified and acting auditor of Miami county, and W. H.' Alexander, B. B. Searff and W. B. Segner are the duly qualified and acting commissioners of said county.
“The said board of commissioners have passed a resolution directing the said auditor to purchase books, blanks and other supplies, with the funds of Miami county, for the purpose of keeping the records of the receipts and expenditures of the office of sheriff, clerk, probate judge, recorder, treasurer and auditor, as required by a law passed by the 72d general assembly of Ohio, entitled ‘A bill relating to the duties and compensation of certain county officers and their assistants in Miami county.’ It was provided that said act should take effect August 1, 1896.
“Said auditor threatens to, and will, unless restrained by the court, expend a large' sum of money, more than $200.00, of the funds of Miami county, in the purchase of said supplies to the great and irreparable injury of plaintiff and all other taxpayers of Miami county.
“Eor that said law requiring the purchase of said supplies and the keeping of said records is a law of general nature, applying only to Miami county.
“It fixes a different compensation for each of said officers from any .similar officer in the state *128 of Ohio. It creates and imposes different duties upon each of said officers, from those imposed upon other similar officers of the state, and creates a new crime, punishable by fine and imprisonment, which applies to the officers of Miami county alone. Section 13 of said act, provides that any officer mentioned in section 1, who wilfully fails or refuses to perform faithfully and promptly any duty required of him by said act, or knowingly violates any provision thereof, shall be fined not more than $5,000.00 or imprisoned in the penitentiary not less than one year or more than five years, or both, and that the said penalties against said officers shall be in addition to penalties provided by existing statutes.
“Wherefore plaintiff prays that a temporary restraining order may issue restraining said auditor and commissioners from purchasing said books and supplies, and that upon final hearing said law may be declared unconstitutional and void and said injunction made perpetual, and for all other relief to which he may be entitled in law and equity.”
The defendants below interposed a demurrer to this petition, which the court overruled on the ground that the statute under which the defend ants were about to proceed, was unconstitutional and the defendants declining to plead further, a final judgment was entered perpetually restraining them from proceeding under the law. This judgment having been affirmed by the circuit court, in proceedings in error instituted in that court, the plaintiffs in error, defendants below, seek its reversal in this court.
The first section of the statutes provides as follows:
Section 2 of the act authorizes each county officer to select the employes in his office, and to de *129 termine the capacity in which each shall serve, but their number and compensation, is to be fixed by the county commissioners. The remainder of this section, together with sections three, four, five, six, seven, eight, ten, and eleven, relate to the manner in which the scheme of compensation is to be executed. The ninth section provides additional compensation for the sheriff on account of keeping prisoners; section twelve makes an allowance to the prosecuting attorney for services required of him' in collecting costs and fees; and section thirteen provides for punishing any-officer mentioned in section one, for wilful misconduct therein specified.
The statute is limited to Miami county by its terms, its primary object is to prescribe the fees of the county officers of that county. The system it adopts differs from that in operation in the other counties in the state as prescribed by the general statute relative to the fees of county officers. If this subject is susceptible of regulation only by a general law, the statute under consideration is void because, for that reason it conflicts with article 2, section 26, of the constitution of this state, which declares that all laws of a general nature shall operate uniformly throughout the state.
The authorities do not establish any standard by which to determine with certainty whether a given or particular subject matter of legislation may or may not be regulated by a local statute. The concurring judgment of mankind declares that certain subjects may be so regulated and that certain other subjects may not be, but must be' regulated by general laws. That is, laws operating throughout the state. There is, however, still another class of subjects so far partaking of the *130 nature of both those first mentioned that it is extremely difficult to satisfactorily assign them to either one or the other of those two classes; There being considerations, of more or less weight, pointing different ways. The power to reg’ulate the compensation of county officers by local statutes, in view of the contending opinions on the subject, may be appropriately assigned to this third, or doubtful class.
Doubtless upon a general view the subject is one of wide spread interest, and at times occupies a conspicuous position before the public. Good government requires that any efficien t and economical system brought into successful operation should be equally enjoyed by all the inhabitants of the state irrespective of county lines. On the other hand the taxpayers or inhabitants of one county have no appreciable material interest in the amount of compensation paid to its officers by another county. No part of the burden rests upon them.
Each county pays its own officers, and no other county is called to contribute anything to that end. The amount of service required varies in the several counties, and chiefly depends upon conditions existing in the countjr where rendered. Population, doubtless, is an important factor in this connection, but wealth and the occupation of the inhabitants, whether agricultural, manufacturing, mining or commercial, also bear materially upon the question of the extent of service required. What would be adequate compensation for a particular officer in a small agricultural county, would be a mere pittance to one filling the same office in the counties of Hamilton or Cuyahoga. How to adjust the compensation to the serv *131 ices actually performed is doubtless a difficult question.
Whatever system may be adopted, however, the object sought should be a fair and equitable adjustment, with reference to each other, of the services requited of a county officer, and his compensation.
It is contended that this can be done by a general law classifying counties for this purpose, according to population, wealth, or the prevailing-occupation of its inhabitants. Doubtless much could be accomplished in this way, and any gross inequality respecting official salaries in different counties remedied or prevented; but that exact adjustment of compensation to services, possible by means of a local statute, cannot be attained by any plan of classification that groups a number of counties together, though it might be accomplished by a general law creating as many classes as there are counties in the state. This, however, would not be distinguishable in principle from local legislation. It would create as many different rules upon the subject as there are counties within the state, the evil which the provision against local legislation was designed to prevent. Where, however, the general assembly has power to act, the courts have no concern with the wisdom of their action. Doubtless they have the power to classify counties for this purpose; if they, also, have the power to enact local statutes ■ upon the subject, the choice of methods is with that body.
That a particular subject of legislation can be as well, or better, regulated by a local statute as by a general one, may bear on the question of power, however, upon the ground that it tends to stamp upon such subject a local character. That *132 is, the circumstance, alone, that a particular subject of legislation is specially adapted to regulation by a local statute is, of itself, entitled to consideration in determining the character of such subject, whether local or general. In the case rtnder consideration the subject may not only be as well or better regulated by a local as by a general statute but is also, as we have seen, one that primarily and immediately concerns the inhabitants or taxpayers of the county to which it relates. Moreover, the law itself should be moulded to suit the conditions found to exist in such county.
This brief discussion of the question was indulged in with a view to show that, .when considered upon its merits, independently of authority, there are substantial grounds for the contention that the regulation of the compensation of county officers may be accomplished by local statutes.
Thequestion, however, has been considered by our predecessors, and determined in favor of the power.
In 1868, Judge White, an eminent jurist, in the case of Crikett et al. v. The State, 18 Ohio St., 22, while discussing the question of compensation of county officers, used the following language:
“ There is nothing in the constitution prohibiting appropriate local legislation. And for myself, I will say that it seems to me theamountof compensation to be attached to a local office is a question in its nature local, and that a law to regulate such compensation can not properly be regarded as a law of a general nature. ’ ’
The question was not before the court, but the language discloses the views of an able and conscientious judge, and is not to be wholly disregarded as an authority upon the question.
*133 In 1871 the precise question was before the court, in the case of The State ex rel. v. The Judges, etc., 21 Ohio St., 1, and the court there held that a statute fixing and limiting the compensation of the county ■ officers of Hamilton county was a local law. On page 10 Judge White says: “But in the opinion of this court, this act cannot be regarded as a law of a general nature. The act was intended to provide for a condition of things in its nature local to Hamilton county.”
These observations of Judge White are as applicable to the statute now under consideration, as they were to the one the court was then considering. Where, in the nature of things, conditions may exist that call for local legislation, it should be presumed in support of a local statute that they did exist. As we have already seen, the conditions upon which the compensation of county officers should be made dependent are chiefly local. It is apparent, therefore, that conditions may have existed in Miami county that justified the action of the general assembly. According’ to the. principle just announced, it becomes the duty of the court to presume they did exist.
In 1891 this court, in Hart v. Murray, 48 Ohio St., 605, adhered to its former ruling in the case of The State ex rel. v. The Judges, etc., 21 Ohio. St., 1, by upholding the constitutionality of a statute (83 Ohio Laws, 168), prescribing the compensation of justices of the peace in the city of Cleveland.
Whéther section thirteen of the statute in question conflicts with article 2, section 26, of the constitution of this state is immaterial to the present inquiry. The question will properly arise whenever a prosecution is begun under its provisions. It prescribes penalties for the misconduct of offi *134 cers of Miami county, to which the officers of other counties are not subject. It is severable from the other sections of the act, forms no part of the particular scheme of compensation designed by the statute. This scheme is complete in all its details without this obnoxious section, which simply denounces additional penalties against the officers of Miami county for official misconduct. These officers remain subject to the provisions of the criminal code that are applicable to all county officers throughout the state, and which should be presumed to be sufficient to keep them on the line of duty. We cannot say that the plan of compensation, complete as it appears 'to be in all its details, would not have been adopted if the statute had not contained this section.
The same considerations apply to section 14 of the act in question; it relates to official bonds. If it should be construed to extend the liability of a surety on an existing official bond, we may wait until a defalcation occurs and an attempt is made to hold the surety beyond the terms of his obligation. If this section in this respect is unconstitutional in its operation on the surety, such result, in its nature is temporary, and will disappear with the giving of a new bond. And as this section itself authorizes the county commissioners to require a new bond of present incumbents, we think there is no ground for serious contention that this section contains provisions that should defeat the hole statute.
Judgment reversed.
Burket C. J.. and Shauck, J„, dissent.